NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| VIRGINIA [sic] COULTER, | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 07-4894 (JAG) |
| v. | : | |
| | : | OPINION |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, TRANSPORTATION SAFETY ADMINISTRATION, and PATRICIA LAMB, | : | |
| Defendants. | : | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion to dismiss the Complaint, pursuant to FED. R. CIV. P. 12(b)(2), 12(b)(5), and 12(b)(6), by defendant United States Department of Homeland Security, Transportation Safety Administration ("TSA"), and the cross-motion to amend the Complaint, pursuant to FED. R. CIV. P. 15(a), by plaintiff Victoria Coulter ("Coulter" or "Plaintiff"). For the reasons stated below, TSA's motion to dismiss, pursuant to Rules 12(b)(2) and (5), shall be denied, but its motion to dismiss, pursuant to Rule 12(b)(6), shall be granted. Coulter's cross-motion to amend the Complaint shall be granted, in part, and denied, in part.

**I. FACTS**

Plaintiff is a flight attendant employed by American Airlines. (Compl. ¶ 4.) At Newark

Airport, the flight crew, including flight attendants, are required to pass through walk-through magnetometers, or metal detectors.  (Id. at ¶ 6.)

On November 20, 2006, Plaintiff was scheduled to work on Flight 1857 departing from Newark Liberty International Airport ("Newark Airport") in Newark, New Jersey.  (Id. at ¶ 5.)  On that date, when Plaintiff passed through the walk-through magnetometer, "she set it off."  (Id. at ¶ 7.)  After removing her jewelry, Plaintiff passed through the walk-through magnetometer a second time, and again set it off.  (Id. at ¶¶ 8-9.)  Plaintiff was then directed to undergo an individual inspection performed by a TSA employee with a handheld magnetometer, or hand-wand.  (Id. at ¶ 9.)

Patricia Lamb, an employee of the TSA, performed the individual inspection of Plaintiff in what Plaintiff describes as a "physically invasive, abusive and harassing" manner.  (Id. at ¶ 10.)  Specifically, Plaintiff alleges that:

> a. Ms. Lamb placed her hands along Ms. Coulter's breasts with the palm of her hand, with significant pressure;
>
> b. Ms. Lamb instructed Ms. Coulter to undo her belt;
>
> c. Ms. Lamb placed her hands inside the waistband of Ms. Coulter's skirt and against her stomach;
>
> d. Ms. Lamb asked Ms. Coulter to put one foot forward, in essentially a lunge position, and then placed the hand-wand directly on Ms. Coulter's skin, starting at her ankle, with great force; and
>
> e. Ms. Lamb then gradually moved the hand-wand up against Ms. Coulter's body, forcefully all the way up her leg, and then forcefully shoved the hand-wand into Ms. Coulter's groin/private area.

(Id.)

## II. PROCEDURAL HISTORY

On or about February 1, 2007, Plaintiff's attorney sent to the TSA a Claim of Damage, Injury or Death form, describing the November 20, 2006 incident. (Claim for Damage, Injury, or Death form dated January 24, 2007, attached as Ex. A to Nirenberg Certif.) Plaintiff's counsel also sent a supplemental letter to the TSA on or about March 30, 2007, communicating Plaintiff's demand for $500,000 to settle her claims. (Letter dated March 30, 2007 from Gerald Jay Resnick to Brett Barber, Paralegal in Office of Chief Counsel at TSA, attached as Ex. B to Nirenberg Certif.)

Plaintiff initiated the instant action against the TSA and Lamb over six months later, on October 9, 2007. In a nine-count Complaint, Plaintiff alleged <u>Bivens</u> claims against the TSA and Lamb for sexual harassment, sexual assault, assault, and battery. Plaintiff also alleged common law causes of action for sexual assault, assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress.

After filing the Complaint with this Court, Plaintiff sent a copy of the Complaint, together with a letter dated November 6, 2007, via certified mail to the United States Attorney for the District of New Jersey and the Acting United States Attorney General. (Letter dated November 6, 2007 from Jonathan I. Nirenberg to United States Attorney Christopher J. Christie, Esq. and Acting United States Attorney General Peter D. Keisler, attached as Ex. C to Nirenberg Certif.) On October 11, 2007, Plaintiff sent a courtesy copy of the Complaint to the TSA. (Letter dated October 11, 2007 from Gerald Jay Resnick to Brett Barber, Paralegal in Office of Chief Counsel at TSA, attached as Ex. D to Nirenberg Certif.)

On February 1, 2008, the TSA filed the instant motion to dismiss,[1] arguing that Plaintiff improperly served the Complaint under FED. R. CIV. P. 4, and that Plaintiff's Bivens claims and common-law tort claims should be dismissed as a matter of law. In addition to opposing the TSA's motion, Plaintiff requested leave to file an amended complaint.

### III.  STANDARD OF REVIEW

**A.    Rules 12(b)(2) and 12(b)(5)**

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of summons must be satisfied." Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987).  Under Rule 12(b)(5), a party may file a motion asserting insufficient service of process as a defense.  "When a party moves to dismiss under Rule 12(b)(5), the party making the service has the burden of demonstrating its validity." Carpenter v. Young, No. 04-927, 2004 WL 1858353, at *2 (E.D. Pa. Aug. 3, 2004) (internal quotations and citations omitted).

**B.    Rule 12(b)(6)**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the

---

[1] In its brief, TSA states that "Plaintiff has failed to serve Patricia Lamb in accordance with the Federal Rules of Civil Procedure," and that, "[u]ntil such time as she is properly served, we will not be appearing on her behalf." (Def. Br. 1.)  Plaintiff confirmed that she has been unable to serve Patricia Lamb ("Lamb") in person or by mail.  (Certif. of Jonathan I. Nirenberg ("Nirenberg Certif.") ¶ 7.)  Since a motion has not been made to dismiss Lamb as a party-defendant for insufficient service of process, this Court need not address this procedural defect.

decision in other respects). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (internal citations omitted); see also FED. R. CIV. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citations omitted). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1357 at 340 (2d ed. 1990)).

A court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994); see also Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 n.8 (3d Cir. 1997). "The defendant bears the burden of showing that no claim has

5

been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974; see also In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397 (3d Cir. 2000) (stating that a complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim).

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). "[A] 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" Id. (emphasis in original) (quoting Shaw v Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)). Any further expansion beyond the pleading, however, may require conversion of the motion into one for summary judgment. FED. R. CIV. P. 12(d).

**C.     Rule 15(a)**

FED. R. CIV. P. 15(a) stipulates that once a response to a party's pleading is served, that pleading may be amended only by leave of court or by written consent of the adverse party. Under Rule 15(a), leave to amend a pleading "shall be freely given when justice so requires."

6

FED. R. CIV. P. 15(a). A general presumption exists in favor of allowing a party to amend its pleadings. See Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 938 (3d Cir. 1984) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Leave to amend a complaint should be granted freely in the absence of undue delay or bad faith on the part of the movant, as long as the amendment would not be futile and the opposing party would not suffer undue prejudice. See Foman, 371 U.S. at 182; Adams v. Gould Inc., 739 F.2d 858, 864 (3d Cir. 1984). "[A] refusal of a motion for leave to amend must be justified." Riley v. Taylor, 62 F.3d 86, 90 (3d Cir. 1995). The Third Circuit has identified the following as permissible justifications for denying a motion to amend: "(1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposition; (4) repeated failures to correct deficiencies with previous amendments; and (5) futility of the amendment." Id. at 90 (citing Foman, 371 U.S. at 182)). "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988) (citation omitted).

## IV. ANALYSIS

**A.     Motion to Dismiss Under Rules 12(b)(2) and 12(b)(5)**

The TSA argues that it was not properly served, in accordance with Rule 4(i) of the Federal Rules of Civil Procedure. Rule 4(i), which describes how to serve the United States and its agencies or employees, states in relevant part:

> (1) *United States.* To serve the United States, a party must:
>     (A)(i)  deliver a copy of the summons and of the complaint
>           to the United States attorney for the district where
>           the action is brought – or to an assistant United
>           States attorney or clerical employee whom the

>             United States attorney designates in a writing filed
>             with the court clerk – or
>       (ii)  send a copy of each by registered or certified mail to
>             the civil-process clerk at the United States
>             attorney's office;
>    (B)      send a copy of each by registered or certified mail to
>             the Attorney General of the United States at
>             Washington, D.C.; and
>    (C)      if the action challenges an order of a non-party
>             agency or officer of the United States, send a copy
>             of each by registered or certified mail to the agency
>             or officer.
> 
> (2) ***Agency; Corporation; Officer or Employee Sued in an Official Capacity.***  To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee.

FED. R. CIV. P. 4(i)(1), (2).

According to the TSA, Plaintiff did not serve a copy of the Summons and Complaint on the Attorney General or the agency itself.  (Def. Br. 14.)  In her opposition brief, Plaintiff submitted exhibits showing that she sent a copy of the Summons and the Complaint to Peter D. Keisler, Acting United States Attorney General, on November 6, 2007.  (Ex. C of Nirenberg Certif.)  Plaintiff also showed that she sent a courtesy copy of the Complaint to the TSA by overnight mail on October 11, 2007.  (Ex. D of Nirenberg Certif.)  The TSA replied by pointing out that Plaintiff did not comply with the mandates of Rule 4(i)(2), which requires service of both the summons and the complaint by registered or certified mail.

This Court finds that dismissal of the instant Complaint for failure to effectuate service properly would unnecessarily delay this litigation.  The TSA correctly pointed out that Rule 4(i)(2) applies to this action.  Pursuant to Rule 4(i)(2), Plaintiff is required to serve a copy of the

Summons and Complaint via registered or certified mail upon the United States Attorney for the District of New Jersey, the United States Attorney General, and the TSA.  Plaintiff's service of process is flawed in two minor respects: (1) she sent the Complaint to the TSA via overnight mail, as opposed to registered or certified mail; and (2) she failed to send a copy of the Summons together with the Complaint to the TSA.

Plaintiff's insignificant procedural errors hardly warrant dismissal of this action.  The TSA received the courtesy copy of the Complaint via overnight mail.  Plaintiff's failure to comply with the literal requirements of Rule 4 is mitigated by the TSA's receipt of actual notice of this action.  While Rule 4 is aimed at providing notice to the defendants, actual notice does not exempt a plaintiff from following the strictures of the rule.  Ignition Media Group, LLC v. Pantel Sys., Inc., No. 07-0439, 2007 WL 2728662, at *1 n.2 (E.D. Pa. Sept. 14, 2007).  However, "[w]hen there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process."  Stranahan Gear Co., Inc. v. NL Industries, Inc., 800 F.2d 53, 56 (3d Cir. 1986); see also Overseas Food Trading, Ltd. v. Agro Aceitunera, S.A., 2007 WL 77337, at *3 (D.N.J. 2007) ("Although actual notice is not dispositive of a challenge to the sufficiency of service of process, it is certainly a factor that weighs in favor of denying Defendant's motion.").  It would be superfluous, in this instance, to require Plaintiff to send a copy of the Summons and Complaint to the TSA by certified or registered mail, after having already successfully sent the Complaint to the TSA by overnight mail.

Given Plaintiff's good faith efforts to execute service of process, pursuant to Rule 4(i), and the TSA's receipt of actual notice of this suit, this Court declines to dismiss the Complaint for failure to effectuate service.

**B.      Motion to Dismiss Under Rule 12(b)(6)**

   1.     *Bivens* Claims

The TSA argues that the Bivens claims articulated in Counts One, Two, Four, and Six of the Complaint should be dismissed, as against the TSA, because Bivens claims can only be raised against individual defendants, and not against the United States or a United States agency. This Court agrees.

The Supreme Court has expressly and unequivocally held that Bivens claims cannot be brought against a federal agency. F.D.I.C. v. Meyer, 510 U.S. 471, 484-86 (1994) ("An extension of Bivens to agencies of the Federal Government is not supported by the logic of Bivens itself."); Mierzwa v. United States, No. 07-3362, 2008 WL 2529315, at *3 (3d Cir. June 26, 2008) ("[A] plaintiff may not use Bivens to pursue constitutional claims against the United States or its agencies."). Any Bivens claims raised by Plaintiff against the TSA, therefore, must be dismissed.

   2.     Tort Claims

The TSA offers two arguments as to why the common-law tort claims articulated in the Complaint should be dismissed. First, the TSA argues that Plaintiff did not allege that she presented an administrative claim to the agency, as required under the Federal Tort Claims Act (the "FTCA"). (Def. Br. 5-6.) Second, the TSA contends that the FTCA cloaks it with absolute immunity from tort suits. (Def. Br. 6-7.)

   a.     *Plaintiff Filed An Administrative Claim In Accordance With the FTCA*

This Court rejects the TSA's contention that Plaintiff violated the FTCA by failing to file an administrative claim. Under the FTCA, a claimant must first present his or her claim to the

10

appropriate federal agency before filing suit. 28 U.S.C. § 2675 (West, Westlaw through P.L. 110-313 approved Aug. 12, 2008). The claimant must also submit to the federal agency a claim for money damages in a sum certain. 28 C.F.R. § 14.2(a) (2008). A claimant may only file suit after receiving a written statement from the federal agency denying the claim, or after giving the agency six months to respond to the claim. 28 U.S.C. § 2675.

In response to the TSA's motion, Plaintiff presented evidence showing that she sent to the TSA a Claim of Damage, Injury or Death form describing the incident which serves as the basis of her tort claims. (Ex. A to Nirenberg Certif.) On or about March 30, 2007, Plaintiff sent a supplemental letter to the TSA expressing her settlement demand of $500,000. (Ex. B to Nirenberg Certif.) As Plaintiff followed the requirements set forth in 28 U.S.C. § 2675 and 28 C.F.R. § 14.2 before filing the instant action, this Court shall not dismiss the Complaint for failure to serve an administrative claim.

        b.     *Plaintiff's Failure To Name the United States as a Party-Defendant Warrants Dismissal of Her Tort Claims*

This Court also holds that the tort claims set forth in the Complaint against the TSA should be dismissed, since the TSA is not the appropriate party-defendant. The FTCA waives the sovereign immunity of the United States to allow plaintiffs to pursue substantive tort claims. Simon v. United States, 341 F.3d 193, 199 (3d Cir. 2003). It permits plaintiffs to file

> civil actions on claims against the United States, for money damages, accruing on or after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (West, Westlaw through P.L. 110-313 approved Aug. 12, 2008).

The FTCA expressly states that "[t]he authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title shall be exclusive." 28 U.S.C. § 2679(a) (West, Westlaw through P.L. 110-313 approved Aug. 12, 2008). The Third Circuit has interpreted this provision to mean that "the FTCA authorizes suits only against the United States itself, not individual defendants or agencies." Banks v. Roberts, 251 F. App'x 774, 777 (3d Cir. 2007); see also Dambach v. United States, 211 F. App'x 105, 108 (3d Cir. 2006) ("Although the FTCA waives the sovereign immunity of the United States for certain torts committed by federal employees, a federal agency cannot be sued in its own name.").

By filing the tort claims against the TSA instead of the United States, Plaintiff failed to name the appropriate party-defendant. The tort claims against the TSA articulated in Counts Three, Five, Seven, Eight, and Nine of the Complaint will therefore be dismissed.

**C.    Cross-Motion to Amend the Complaint, Pursuant to Rule 15(a)**

In her cross-motion, Plaintiff seeks to amend the Complaint in four respects.

1.    Fourth Amendment *Bivens* Claim

First, Plaintiff requests to amend the Complaint to add a separate Bivens claim against Lamb, for performing an unlawful search and seizure in violation of the Fourth Amendment. As no appearance has been made on Lamb's behalf with respect to this cross-motion, no opposition is reflected in the record.

This Court shall permit Plaintiff to add this claim in an amended complaint. Although

this Court has not been asked to resolve the sufficiency of Plaintiff's efforts to effectuate service on Lamb, it is important to note that "[t]he filing of an amended complaint does not restart the service period as to defendants named in the original complaint." Zhang v. Haven-Scott Assoc., Inc., No. 95-2126, 1996 WL 355344, at *5 (E.D. Pa. June 21, 1996).

       2.      Adding the United States as a Party-Defendant

Second, Plaintiff requests to add the United States as a defendant to her common law tort claims of sexual assault, assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress. As discussed supra in Section IV, B, 2, b of this Opinion, the FTCA contemplates the United States as the appropriate party-defendant for torts alleged to have been committed by federal employees. Dambach, 211 F. App'x at 108. At issue, however, is the applicability of the FTCA's bar against claims arising out of intentional torts.

Although the FTCA waives the United States' sovereign immunity with respect to tort claims, this waiver of sovereign immunity does not apply to "claims arising out of . . . assault, [or] battery . . . ." 28 U.S.C. § 2680(h). "[A]ny objection raised by the defendant which is based upon the exceptions listed in § 2680 goes to the issue of jurisdiction over the subject matter . . . ." Gibson v. United States, 457 F.2d 1391, 1392 n.1 (3d Cir. 1972). Any claim arising out of an alleged assault or battery by a federal employee purported to be acting within the scope of his employment is barred by the doctrine of sovereign immunity, pursuant to the FTCA exception set forth in § 2680(h). United States v. Shearer, 473 U.S. 52, 55 (1985) ("Section 2680(h) does not merely bar claims for assault or battery; in sweeping language it excludes any claim arising out of assault or battery. We read this provision to cover claims like [plaintiff's] that sound in negligence but stem from a battery committed by a Government employee."); Olsen v. United

13

States ex rel Dept. of the Army, 144 F. App'x 727, 732 (10th Cir. 2005) (holding that tort claims based on the Government's vicarious liability for alleged sexual assault by military recruitment officer were banned under the FTCA exception).

However, such claims may proceed if they are based on the "acts or omissions of investigative or law enforcement officers of the United States Government . . . ." Id. "For purposes of this subsection, 'investigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." Id.

The Third Circuit has interpreted this statutory provision to permit intentional tort claims against the United States if the tort occurred during a search, a seizure of evidence, or an arrest. Pooler v. United States, 787 F.2d 868, 872 (3d Cir. 1986).

The TSA argues, and this Court agrees, that airport security screeners do not constitute investigative or law enforcement officials within the meaning of the FTCA. The TSA points to a decision by the District Court for the District of Oregon in Welch v. Huntleigh USA Corp., No. 04-663, 2005 WL 1864296 (D. Or. Aug. 4, 2005). In that case, the court held that the United States could not be held liable for intentional torts committed by an airport security screener. In Welch, a plaintiff filed a battery claim against the United States, alleging that she was injured by a security screener when passing through an airport security checkpoint. 2005 WL 1864296, at *1. The district court dismissed the battery claim raised against the United States, holding that airport security screeners did not have the authority to execute searches, seize evidence, or make arrests for violations of federal law. Id. at *5. The screeners "do not have the authority to detain individuals, and must call law enforcement officers to search, seize, and arrest individuals if

14

illegal items are found." Id.  All searches of airline passengers are consensual, explained the court, and the screeners could not seize prohibited items, but instead could only direct the passenger to dispose of the object.  Id. (citing Wilson v. United States, 959 F.2d 12, 15 (2d Cir. 1992) (holding that parole officers are not investigative or law enforcement officers under the FTCA because they may only seize contraband in plain view with the parolee's consent)).

In arguing that the screeners are "legally required to execute searches," and therefore constitute investigation or law enforcement officials, Plaintiff cites to 49 U.S.C. §§ 44901 and 44935(b).  (Pl. Opp. Br. 10.)  Section 44901 of Title 49, United States Code states that federal employees must screen airline passengers prior to boarding an aircraft.  § 44901(a).  The statute defines "screening" as "a physical examination or non-intrusive methods of assessing whether cargo poses a threat to transportation security. Methods of screening include x-ray systems, explosives detection systems, explosives trace detection, explosives detection canine teams certified by the Transportation Security Administration, or a physical search together with manifest verification."  § 44901(g)(5).  Subsection 44935(b) does not include language referencing the power of an airport security screener to perform searches, but instead provides:

> In coordination with air carriers, airport operators, and other interested persons, the Under Secretary shall review issues related to human performance in the aviation security system to maximize that performance. When the review is completed, the Under Secretary shall recommend guidelines and prescribe appropriate changes in existing procedures to improve that performance.

49 U.S.C. § 44935(b).

However, neither statutory provision empowers airport security screeners to execute searches, seize evidence, or make arrests for violations of federal law, as contemplated by

15

Congress when drafting § 2680(h).  The Fifth Circuit in Solomon v. United States, 559 F.2d 309 (5th Cir. 1977) provided an overview of the legislative intent behind § 2680(h):

> A review of the legislative history reveals that Congress, in response to 'no-knock' raids conducted by federal narcotic agents on the wrong dwellings, passed the 1974 amendment to the Federal Tort Claims Act to provide compensation for such victims. S.Rep.No. 588, 93rd Cong., 2d Sess., reprinted in (1974) U.S.Code Cong. & Admin.News, pp. 2789, 2790-91.  Congress intended to waive sovereign immunity for the torts of false arrest and false imprisonment only in limited circumstances.  The federal government deprived itself 'of the defense of sovereign immunity in cases in which Federal law enforcement agents (or investigative officers), acting within the scope of their employment, or under color of Federal law, commit (committed) . . . false imprisonment, false arrest . . . ."  Id. at 2791.

559 F.2d at 310.

The FTCA's legislative history indicates that the investigative or law enforcement official exception was not intended to apply to airport security screeners.  Compare Solomon v. United States, 559 F.2d 309, 310 (5th Cir. 1977) (holding that security employees of military exchange were not investigative or law enforcement officers as defined under 2680(h)) and Wilson v. United States, 959 F.2d 12, 15 (2d Cir. 1992) (holding that parole officers do not fit within the 2680(h) exception because they do not have the power to make arrests and can only perform searches or seize evidence with the parolee's consent) with Eyo v. United States, No. 06-6185, 2007 WL 4277511, at *4-5 (D.N.J. Nov. 29, 2007) (holding that postal inspectors constitute investigative or law enforcement officers within the purview of 2680(h) because they have the power to make arrests and seize evidence in certain instances).  Indeed, the Third Circuit has held that "employees of administrative agencies, no matter what investigative conduct they are involved in, do not come within the § 2680(h) exception."  Matsko v. United States, 372 F.3d

556, 560 (3d Cir. 2004) (holding that Mine Safety and Health Administration inspector was not an investigative or law enforcement official within the meaning of § 2680(h)).

Since airport security screeners do not constitute investigative or law enforcement officials within the meaning of § 2680(h), Plaintiff may not pursue her common-law tort claims against the United States, as they arise out of the alleged assault and battery central to the November 20, 2006 incident.

      3.    <u>Waiver of Sovereign Immunity, Submission of Administrative Claim</u>

Third, Plaintiff seeks to add an allegation stating that (1) the United States has waived its sovereign immunity with respect to her common law claims, and (2) she submitted an administrative claim and waited over six months before filing the instant lawsuit. Since the FTCA bars Plaintiff from raising common-law tort claims against either the TSA or the United States, this request is denied, as moot.

      4.    <u>Curing Minor Errors</u>

Last, Plaintiff seeks to amend the Complaint to cure minor errors. Specifically, Plaintiff asks permission from this Court to correct several paragraphs in which she erroneously used the name "Ms. Lamb" instead of "Ms. Coulter." (Pl. Opp. Br. 18.) Plaintiff also wishes to add to the pleading that the destination of Flight 1857 was San Juan Airport, in Puerto Rico. (<u>Id.</u>) As the named defendant would not be prejudiced by these minor changes, this Court shall permit Plaintiff to make these corrections in an amended complaint.

## V. CONCLUSION

For the reasons stated above, the TSA's motion to dismiss, pursuant to Rules 12(b)(2) and (5) of the Federal Rules of Civil Procedure, shall be denied. Its motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure shall be granted. While the Complaint shall not be dismissed for failure to effectuate service, all Counts raised against the TSA in the Complaint shall be dismissed, with prejudice.

Plaintiff shall be permitted to amend the Complaint to allege a Bivens claim against Lamb for violation of the Fourth Amendment, and to cure minor errors in the pleading. However, Plaintiff is denied leave to add the United States as a party-defendant with respect to her common-law tort claims. Such an amendment to the Complaint would be futile, since Plaintiff is barred under § 2680(h) from asserting a tort claim against the United States that arises out of assault or battery.

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: September 23, 2008

18