<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY</u>

|  |  |
|---|---|
| VICTORIA COULTER, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> UNITED STATES DEPARTMENT OF : <br> HOMELAND SECURITY, : <br> TRANSPORTATION SAFETY : <br> ADMINISTRATION AND PATRICIA : <br> LAMB, : <br> : <br> Defendants. : | Civil Action No. 07-4894 (JAG) <br><br> **OPINION** |

**<u>GREENAWAY, JR., U.S.D.J.</u>**

This matter comes before this Court on the motion to dismiss the First Amended Complaint by defendant, Patricia Lamb ("Defendant"), pursuant to FED. R. CIV. P. 12(b)(2), 12(b)(5), and 12(b)(6)[1], and on the cross-motion to amend the Complaint, pursuant to FED. R. CIV. P. 15(a), and to extend time for service, pursuant to FED. R. CIV. P. 4(i)(4), by plaintiff, Victoria Coulter ("Coulter" or "Plaintiff"). For the reasons set forth below, Defendant's motion to dismiss, pursuant to Rules 12(b)(2) and 12(b)(5), is granted. Plaintiff's cross-motion to extend the time for service is denied. The remaining motions by Defendant and Plaintiff are denied, as moot.

---

[1] In an Order, dated September 23, 2008, (Docket Entry No. 17), this Court dismissed Plaintiff's claims against the United States Department of Homeland Security, Transportation Safety Administration ("TSA").

## I. FACTUAL BACKGROUND

Plaintiff Victoria Coulter is an individual, residing at 26 Winding Hill Drive, Hackettstown, New Jersey. (First Amended Complaint at ¶ 1.) Defendant Patricia Lamb was, at all times relevant, an employee of the Transportation Safety Administration. (Id. at ¶ 3.) Plaintiff is a flight attendant employed by American Airlines. (Id. at ¶ 4.) Plaintiff has worked as a flight attendant for approximately 30 years. (Id.)

On November 20, 2006, Plaintiff was scheduled to work as a flight attendant on Flight 1857, flying out of Newark Airport. (Id. at ¶ 5.) At Newark Airport, the flight crew, including flight attendants, are required to pass through the same walk-through magnetometers (also known as a metal detector) as other members of the flying public. (Id. at ¶ 6.) When Plaintiff passed through one of the walk-through magnetometers at Newark Airport on November 20, 2006, she set it off. (Id. at ¶ 7.) On a second walk-through Plaintiff set off the magnetometer again, even though she had removed her jewelry. (Id. at ¶ 8.) After the second time, Plaintiff was called aside for an individual inspection using a handheld magnetometer, also known as a hand-wand. (Id. at ¶ 9.)

Defendant conducted an individual inspection of Plaintiff. (Id. at ¶ 10.) According to Plaintiff, during the inspection: a.) Defendant placed her hands along Plaintiff's breasts with the palm of her hand, with significant pressure; b.) Defendant instructed Plaintiff to undo her belt; c.) Defendant placed her hands inside the waistband of Plaintiff's skirt and against her stomach; d.) Defendant asked Plaintiff to put one foot forward, in essentially a lunge position, and then placed the hand-wand directly on Plaintiff's skin, starting at her ankle, with great force; and e.) Defendant then gradually moved the hand-wand up against Plaintiff's body, forcefully, all the

way up her leg, and then forcefully shoved the hand-wand into Ms. Coulter's groin/private area. (Id.) After Defendant stuck her hands down Plaintiff's skirt and before she instructed her to put one foot forward, Ms. Coulter objected to the treatment and asked if Defendant could at least continue her individual inspection in a private location. (Id. at ¶ 11.) Nonetheless, Defendant continued with her individual inspection of Plaintiff in public. (Id.)

One of Plaintiff's co-workers, Leslie Brooks, witnessed Defendant's inspection of Plaintiff. Brooks felt that the inspection was extremely invasive and totally inappropriate. (Id. at ¶ 12.) He stated further that Defendant's inspection was "a total violation" and constituted "sexual harassment." (Id.) After Mr. Brooks complained about Defendant's conduct, Defendant moved Plaintiff to an office; at that time, another TSA employee searched Plaintiff all over again, while Defendant and a male supervisor were present. (Id. at ¶ 13.)

Later that day, after Defendant's individual inspection of Plaintiff, she filed a report with the Port Authority Police. (Id. at ¶ 14.) According to the TSA's website, "[d]uring the wanding procedure, you will be asked to stand with your feet apart and the screener will pass the wand over your entire body without actually touching you with the wand. Every effort will be taken to do this as discretely [sic] as possible." (Id. at ¶ 15.) Plaintiff avers that Defendant would not have conducted such an intrusive inspection of Plaintiff but for the fact that Plaintiff is a woman. (Id. at ¶ 16.) Plaintiff also alleges that Defendant knew or should have known that her actions toward Ms. Coulter were likely to cause her (Ms. Coulter) to experience severe emotional distress. (Id. at ¶ 17.) The TSA, according to Plaintiff, failed to adequately train, supervise, and discipline Defendant in such a way that it amounted to deliberate indifference to the rights of members of the public. (Id. at ¶ 18.)

Finally, Plaintiff asserts that Defendant was acting within the scope of her employment when she assaulted Plaintiff and/or her position assisted her in assaulting Plaintiff (id. at ¶ 19.); Defendant was acting under color of her authority under federal law with respect to her actions toward Plaintiff (id. at ¶ 20.); and Defendant's actions actually caused Plaintiff extreme embarrassment, humiliation, anxiety, and emotional and physical distress. (Id. at ¶ 21.)

As a result of this incident, Plaintiff asserts that she finds it extremely difficult to fly out of Newark Airport, which she is required to do, and gets anxious just at the thought of it. (Id.) Plaintiff had to take two weeks off from work as a result of the severe emotional distress she suffered and was not paid for those two weeks. (Id. at ¶ 22.)

Defendant's actions toward Plaintiff were willful, wanton and intentional, and in reckless disregard of Plaintiff's rights. (Id. at ¶ 23.)

## II. STANDARD OF REVIEW

**A.    Rule 12(b)(6)**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (internal citations omitted); see also FED. R. CIV. P. 8(a)(2). "Factual allegations must be enough to raise a right to

relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citations omitted). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1357 at 340 (2d ed. 1990)).

A court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994); see also Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 n.8 (3d Cir. 1997). "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974; see also In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397 (3d Cir. 2000) (stating that a complaint should be dismissed only if the alleged facts, taken as true, fail to state a

claim).

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). "[A] 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" Id. (emphasis in original) (quoting Shaw v Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)). Any further expansion beyond the pleading, however, may require conversion of the motion into one for summary judgment. FED. R. CIV. P. 12(d).

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Ashcroft v. Iqbal et al., 129 S.Ct. 1937, 1950 (2009).

**B.**     **Rules 12(b)(2) and 12(b)(5)**

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of summons must be satisfied." Omni Capital Int'l Ltd. v. Rudolf Wolff

& Co., 484 U.S. 97, 104 (1987). Under Rule 12(b)(5), a party may file a motion asserting insufficient service of process as a defense. "When a party moves to dismiss under Rule 12(b)(5), the party making the service has the burden of demonstrating its validity." Carpenter v. Young, No. 04-927, 2004 WL 1858353, at *2 (E.D. Pa. Aug. 3, 2004) (internal quotations and citations omitted).

**C.    Rule 15(a)**

FED. R. CIV. P. 15(a) stipulates that once a response to a party's pleading is served, that pleading may be amended only by leave of court or by written consent of the adverse party. Under Rule 15(a), leave to amend a pleading "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). A general presumption exists in favor of allowing a party to amend its pleadings. See Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 938 (3d Cir. 1984) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Leave to amend a complaint should be granted freely in the absence of undue delay or bad faith on the part of the movant, as long as the amendment would not be futile and the opposing party would not suffer undue prejudice. See Foman, 371 U.S. at 182; Adams v. Gould Inc., 739 F.2d 858, 864 (3d Cir. 1984). "[A] refusal of a motion for leave to amend must be justified." Riley v. Taylor, 62 F.3d 86, 90 (3d Cir. 1995).

The Third Circuit has identified the following as permissible justifications for denying a motion to amend: "(1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposition; (4) repeated failures to correct deficiencies with previous amendments; and (5) futility of the amendment." Id. at 90 (citing Foman, 371 U.S. at 182)). "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." Jablonski v. Pan Am. World Airways,

Inc., 863 F.2d 289, 292 (3d Cir. 1988) (citation omitted).

### III. ANALYSIS

**Lack of Personal Jurisdiction**

Defendant moves to dismiss the Complaint, pursuant to FED. R. CIV. P. 12(b)(2) and 12(b)(5). Defendant argues that this Court lacks personal jurisdiction over her due to Plaintiff's failure to effectively serve process. As a result, Plaintiff's Complaint must be dismissed. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied. "[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987). Plaintiff cross-moves for an extension of time to effect service of process.

Rule 4 of the Federal Rule of Civil Procedure sets out the procedure effecting timely and proper service upon defendants and obtaining jurisdiction over them. Fed. R. Civ. P. 4(i) governs service upon employees of the United States, both when they are sued in their official capacities or in their individual capacities for acts of omissions in connection with the performance of duties on behalf of the United States.

Rule 4(i) provides: "To serve the United States, a party must: (A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought--or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk--or (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office; (B) send a copy of each by registered or certified mail to the Attorney General of the United States...(2) To serve a

United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee...To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g)."

In addition, Rule 4(m) establishes the time period in which Plaintiff must make proper service upon a Defendant. Rule 4(m) provides: "If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." FED. R. CIV. P. 4(m).

Defendant argues that Plaintiff, who has been represented by counsel since the inception of this action, failed to effect timely service upon Defendant. Plaintiff was required to serve Defendant Lamb, the Attorney General of the United States, and the United States Attorney for the District of New Jersey within 120 days of the filing of the Complaint. Plaintiff filed the Complaint on October 9, 2007. Plaintiff's deadline for timely service was on or about February 10, 2008. Plaintiff did not serve Defendant Lamb until October 16, 2008, more than a year after October 9, 2007.

In Petrucelli v. Bohringer and Ratzinger, 46 F.3d 1298, 1305 (3d Cir. 1995) the Third Circuit issued guidance to the District Courts concerning the application of Rule 4(m):

>We hold that as a result of the rule change which led to Rule 4(m), when entertaining a motion to extend time for service, the district court must proceed in the following manner. First, the district court should determine whether good cause exists for an extension of time. If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service....[A] district court may not consider the fact that the statute of limitations has run until after it has conducted an examination of good cause. If the district court determines that good cause does not exist, only then may it consider whether the running of the statute of limitations would warrant granting an extension of time. We emphasize that the running of the statute of limitations does not require the district court to extend time for service of process. Rather, absent a finding of good cause, a district court may in its discretion still dismiss the case, even after considering that the statute of limitations has run and the refiling of an action is barred. <u>Id.</u>

Plaintiff argues that this Court should extend the time for service of process upon Defendant Patricia Lamb <u>nunc</u> <u>pro</u> <u>tunc</u>. Plaintiff cites to FED. R. CIV. P. 4(i)(4), which provides that "The Court must allow a party a reasonable time to cure its failure to...service a person required to be served under Rule 4(i)(2), if the party has served either the United States attorney or the Attorney General of the United States."

Plaintiff asserts that she has shown "good cause" for her failure to service Defendant Lamb within the 120 day period, as required by Rule 4(m). Plaintiff states that she retained Guaranteed Subpoena Service to serve Defendant at the Newark Airport, but that Guaranteed Subpoena was unable to serve her there. Plaintiff then retained the services of Spartan Detective Agency to locate Lamb's home address, but that effort also proved to be unsuccessful. (Plaintiff's Brief at p. 19.) According to Plaintiff, an internet search for the name "Patricia Lamb" reveals approximately 14 individuals with that name who reside in New Jersey. Plaintiff's counsel also made numerous requests to Colette Buchanan, the Assistant United States Attorney who originally represented both other Defendants in this case, asking her to either accept service on behalf of

10

Lamb or to provide her address to Plaintiff.  (Id.)  Ms. Buchanan refused to accept service on Defendant's behalf or provide her personal information.  (Id. at p. 20.)

Defendant counters that Plaintiff does not allege that Defendant was evading service.  Plaintiff has made no allegation that Defendant evaded service, switched jobs, or left the Newark area.  Defendant points out that Plaintiff alleges she used a process server, a private investigator, and an internet search engine, but does not describe these efforts in any detail.  Defendant also states that Plaintiff provides no explanation as to why it was not possible for her detective agency to winnow down the purported list of 14 people named Patricia Lamb.

Defendant suggests the list could have been winnowed down based on a physical description of Ms. Lamb, provided by Plaintiff, or by focusing on the distance each person on the list was from Newark Airport, Defendant's known place of employment.  Further, Defendant avers that Plaintiff's only real effort to serve Ms. Lamb was limited to numerous requests to Colette Buchanan, the Assistant United States Attorney.

Defendant argues that Ms. Buchanan was prohibited by federal law and regulations to represent a federal employee until certain prerequisites have been met.  Defendant states that none of the processes which might have led to Ms. Buchanan's representation of Ms. Lamb could begin until Plaintiff served Ms. Lamb.  Additionally, Ms. Buchanan was strictly prohibited from providing Ms. Lamb's home address, pursuant to the Privacy Act, 5 U.S.C. § 552(a).

This Court agrees that Plaintiff has not shown "good cause" for the more than 250 day delay in serving Defendant Lamb, and agrees with Defendant's reasoning, articulated above, concerning Plaintiff's failure to explain why her efforts to locate Ms. Lamb were unsuccessful.  The Third Circuit has stated that Plaintiff's reliance on a process server or other third party is

insufficient to demonstrate good cause: "We have previously held that reliance upon a third party or on a process server is an insufficient basis to constitute good cause for failure to timely serve, and is also an insufficient basis for granting an extension of time to effect service. We have also held that '[h]alf-hearted' efforts by counsel to effect service of process prior to the deadline do not necessarily excuse a delay, even when dismissal results in the plaintiff's case being time-barred due to the fact that the statute of limitations on the plaintiff's cause of action has run. Even when delay results from inadvertence of counsel, it need not be excused. Further, we have previously cautioned that, '[t]he lesson to the federal plaintiff's lawyer is not to take any chances. Treat the 120 days with the respect reserved for a time bomb.'" Petrucelli, 46 F.3d at 1307.

In order to prevail Plaintiff must demonstrate good faith and a reasonable basis for noncompliance within the specified time period. As the Third Circuit has explained, "We have equated 'good cause' with the concept of 'excusable neglect' of the Federal Rule of Civil Procedure 6(b)(2), which requires "a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rule." MCI Telecom. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir. 1995).

Plaintiff has yet to explain why she did was unable to locate Ms. Lamb or why she failed to move for an extension of time for service until now.

"Nothing on this record explains why it took [Defendant] over three months after it learned of [Plaintiff's] alternate address to serve [Plaintiff]. Moreover the record does not explain why [Plaintiff] never filed a motion to enlarge the time to serve. Since we are presented with no explanations as to what, if any circumstances constitute sufficient 'good cause'...we hold that the district court abused its discretion in finding that good cause existed to excuse late service." Id.

Since this Court has determined that Plaintiff has failed to demonstrate "good cause" under FED. R. CIV. P. 4(m), and since this Court finds Plaintiff's approximately 253 day delay in serving Defendant to be unreasonable, this Court will not extend the time to effect service, under FED. R. CIV. P. 4(i)(4).  This Court lacks personal jurisdiction over Defendant Patricia Lamb, and thus Plaintiff's Complaint is dismissed, without prejudice.

## IV.  CONCLUSION

For the reasons stated above, Defendant's motion to dismiss the First Amended Complaint, pursuant to FED. R. CIV. P. 12(b)(2) and 12(b)(5), due to this Court's lack of personal jurisdiction over Defendant shall be granted.  Plaintiff's cross-motion to extend the time for service, pursuant to FED. R. CIV. P. 4(i)(4) is denied.  Defendant's and Plaintiff's remaining motions are denied, as moot.

     S/Joseph A. Greenaway, Jr.
     JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date:  September 22, 2009